IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC,     Plaintiff, | § § § § | |
| v. | § § | |
| HARPO PRODUCTIONS, INC., et al.,     Defendant. | § § § § | No. 08 C 7322 |
| ================================ | § § | **Judge Matthew Kennelly** |
| HARPO PRODUCTIONS, INC.,     Counter-Plaintiff, | § § § § | |
| v. | § § | |
| ILLINOIS COMPUTER RESEARCH, LLC,     Counter-Defendant | § § § § | |

**HARPO'S MEMORANDUM IN OPPOSITION TO ICR'S MOTION FOR
SUMMARY JUDGMENT ON HARPO'S INEQUITABLE CONDUCT CLAIM**

Charles L. Babcock
Michael Locklar
JACKSON WALKER L.L.P.
1401 McKinney, Ste. 1900
Houston, TX 77010
(713) 752-4200

David P. Sanders
Olivia T. Luk
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2963

*Attorneys for Defendant/Counter-Plaintiff
Harpo Productions, Inc.*

## TABLE OF CONTENTS

I. FACTS REGARDING ICR'S INEQUITABLE CONDUCT ............................................2

II. LEGAL STANDARDS FOR INEQUITABLE CONDUCT............................................4

III. ARGUMENT...........................................................................................................................4

    A. The BarnesandNoble.com website is material......................................................4
    B. Harris had the requisite intent required for inequitable conduct..............................6

IV. CONCLUSION.......................................................................................................................9

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adickes v. S.H. Kress & Co.*,
 398 U.S. 144 (1970) .................................................................................................4

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) .................................................................................................4

*Atkins v. Union Pacific Railroad*,
 685 F.2d 1146 (9th Cir. 1982) .................................................................................4

*Baxter International, Inc. v. McGraw, Inc.*,
 149 F.3d 1321 (Fed. Cir. 1998) ...............................................................................4

*Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd.*,
 394 F.3d 1348 (Fed. Cir. 2005) ...............................................................................6

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) .................................................................................................4

*Dippin' Dots, Inc. v. Dots*,
 476 F.3d 1337 (Fed. Cir. 2007) ............................................................................6, 9

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
 575 F.3d 1312 (Fed. Cir. 2009) ............................................................................8, 9

*GFI, Inc. v. Franklin Corp.*,
 265 F.3d 1268 (Fed. Cir. 2001) ............................................................................4, 6

*Jones v. Merchants National Bank & Trust Co. of Indianapolis*,
 42 F.3d 1054 (7th Cir. 1994) ...................................................................................6

*Molins PLC v. Textron, Inc.*,
 48 F.3d 1172 (Fed. Cir. 1995) ..............................................................................6, 7

*Purdue Pharma L.P. v. Beohringer Ingelheim GMBH*,
 237 F.3d 1359 (Fed. Cir. 2001) ...............................................................................4

*Securities & Exchange Commission v. Koracorp Inds.*,
 575 F.2d 692 (9th Cir.), cert. denied, 439 U.S. 953, (1978) ....................................6

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
 537 F.3d 1357 (Fed. Cir. 2008) .......................................................................7, 8, 9

## FEDERAL STATUTES

Fed. R. Civ. P. 56(c) ........................................................................................................4

37 C.F.R. §1.56 ..............................................................................................................7

37 C.F.R. §1.98 ..............................................................................................................7

This is a patent case. Illinois Computer Research ("ICR") has asserted that Harpo Productions, Inc. ("Harpo") infringes U.S. Patent No. 7,111,252 ("the '252 Patent"). Harpo denies infringement and asserts the affirmative defenses of inequitable conduct and invalidity of the '252 Patent. Harpo's allegation of inequitable conduct relies on the alleged inventor's, Scott Harris ("Harris"), actions during the prosecution of the application that led to the '252 Patent. During that prosecution, Harris misrepresented a prior art reference, the BarnesandNoble.com website, to the Examiner and violated his duty of disclosure by not providing the BarnesandNoble.com website. ICR has filed its motion for summary judgment to dismiss Harpo's inequitable conduct claim.

The Court should deny Illinois Computer Research LLC's ("ICR") motion for summary judgment on inequitable conduct because none of the grounds asserted rests on undisputed facts.

1. ICR's contention that Harris disclosed the BarnesandNoble.com website is wrong: (1) Harris misconstrued the BarnesandNoble.com website in his description; and (2) Harris failed to provide a copy of the website to the Examiner, in contravention of the clear requirements of patent office procedure.

2. ICR's contention that Harris did not see the typed-in text of a book excerpt on the BarnesandNoble.com website is not believable. No dispute exists that the BarnesandNoble.com website included typed-in excerpts of books.[1] The fact finder may infer intent to deceive from the evidence and may ignore a self-serving statement by the inventor.

3. ICR's attempt to diminish the materiality of Harris' deception is itself inequitable. ICR contradicts its repeated statements to this Court and Harris' deposition testimony. ICR has claimed from the beginning of this suit that the Oprah.com website infringes the patent because typed-in text from a book is covered by the

---

[1] ICR's implication that perhaps various versions of the website did not contain excerpts is inconsistent with the uncontroverted evidence.

1

'252 Patent. ICR and Harris contradict themselves and their co-pending claim construction briefing by claiming that typed-in text is not covered by the patent.

4. ICR claims that "during the deposition of Mr. Harris, Harpo counsel elected not to show those pages to Mr. Harris or ask him any questions about them." In fact, Harpo counsel asked Harris specifically about what he remembered regarding the BarnesandNoble.com website. Harris responded that he could not remember.

I. **Facts Regarding ICR's Inequitable Conduct**

Harris, the alleged inventor of the '252 Patent, also wrote and prosecuted the application that led to the '252 Patent. [SUMF #1]. In the application, Harris described the BarnesandNoble.com website:

> Many bookstores are common on the web, such as BarnesandNoble.com and Amazon.com. These provide very convenient browsing for an individual who knows what book they want to buy. The individual can often see a picture of the cover of the book, and read certain reviews about the book. However, the amount of data is often limited. Moreover, the data that is put on the website is typically data that is decided by the website designers, rather than the publishers of the book.

[Appendix 8, U.S. Patent No. 7,111,252 (the '252 Patent), Col. 5, lines 14 - 21].

Harris was correct that BarnesandNoble.com did include a picture of the cover of the book and reviews. What he failed to mention, and, indeed, misled the examiner to believe, was that BarnesandNoble.com did not include text excerpts from books. In truth, the BarnesandNoble.com site did include text from books as shown by the following excerpt from the website:



Architects of the Web
by Robert H. Reid
(Pub. Price: $27.95) B&N Price: $19.56
You save 30% Order Now!

Read a Review

An Excerpt from Architects of the Web

MARC ANDREESSEN
Netscape

Portal to the Web

The tidy, tidy town of Mountain View, California, is bordered by the still tidier town of Sunnyvale in the south and by tony Palo Alto in the north. It has no Mountain, really, nor even much of a View of one, although clear days offer glimpses of some foothills to the west. Much of Mountain View is orderly to the point of Swissness. Lawns are clipped, roads are straight, and intersections are wide with left-turn, U-turn, and straight-only lanes that red, red lights cautiously activate only singly, or in pairs. The tonier residential areas are ones of pet-free apartment complexes with Shangri-la names like The Waters, The Shadows, and Village Lake. The downtown strip is one of understated mom-and-pop shops and mostly Asian restaurants. There isn't a national franchise among them, other than a teensy Domino's Pizza outpost on the eastern fringe. And things get awfully quiet after dark. There's a microbrewery, some coffee houses, maybe a pool hall or two, and that's about it. The real centers of Mountain View's nightlife are the highways leading *outtahere*, particularly to San Francisco, 40 miles to the north.

But shrink-wrapped, tidy, and (let's face it) kind of forgettable as much of the town may be on its surface, its still waters do run deep. Because beneath and above it, in its fiber, cable, and copper, a hidden matrix howls with all of the chaos that the choreographed street traffic lacks. This over-and-underpinning is Mountain View's corner of the Internet, the busy data blanket that now swaddles the earth. Like the

[Appendix 9]. Harris now claims that "I was not aware of any item on the website which included book 'excerpts.'" [Declaration of Mr. Scott Harris at ¶4, Attached to ICR's Statement of Undisputed Material Facts] However, throughout the relevant time period around the filing date of the patent, 1997, 1998, *and* 1999, the BarnesandNoble.com website included text excerpts. [SUMF #2]. Further, Harris' perfect recall in November 2009 of what he saw in 1999 on the BarnesandNoble.com website is amazing. Just two months ago, in his September 2009 deposition, Harris told Harpo counsel that "I don't specifically remember . . ." when asked what he saw on the BarnesandNoble.com website. [SUMF #3].

## II. Legal Standards for Inequitable Conduct

Summary judgment is only proper when no genuine issue of material fact exists and the movant is, therefore, entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant has the burden of demonstrating the absence of a genuine issue as to any material fact and its entitlement to judgment as a matter of law.[2] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). ICR meets this burden only if, after viewing the summary judgment evidence in the light most favorable to Harpo, the Court determines that no genuine issues of material fact exist and no reasonable trier of fact could find in Harpo's favor. *Adickes*, 398 U.S. at 157. However, summary judgment is "rarely appropriate when a party's intent or motive is at issue." *Atkins v. Union Pacific Railroad*, 685 F.2d 1146, 1149 (9th Cir. 1982).

To prove inequitable conduct, a defendant must show "evidence of affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Purdue Pharma L.P. v. Beohringer Ingelheim GMBH*, 237 F.3d 1359, 1366 (Fed. Cir. 2001). Inequitable conduct analysis is a two step process: (1) "a determination of whether the withheld reference meets a threshold level of materiality and intent to mislead," and (2) "a weighing of the materiality and intent in light of all the circumstances to determine whether the applicant's conduct is so culpable that the patent should be unenforceable." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001). Materiality and intent are both fact questions. *Baxter Int'l, Inc. v. McGraw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998). "The more material the omission, the less culpable the intent required." *Id.*

## III. Argument
### A. The BarnesandNoble.com website is material

Harris did not submit a copy of the BarnesandNoble.com website to the Examiner. [SUMF #4]. As shown above, the BarnesandNoble.com website included text excerpts and an

---

2 A "genuine issue" is an issue that can only be resolved by the trier of fact because the issue may be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is "material" if it can affect the outcome of the lawsuit under the governing substantive law. Id. at 248.

image of the cover of the book. *None* of the references submitted by Harris or cited by the Examiner during prosecution of the '252 Patent had cover images coupled with text excerpts from books.

Cover images coupled with text excerpts now form the backbone of ICR's infringement claim against Harpo. [SUMF #5]. It is uncontroverted that the excerpts from the books on the Oprah's Book Club portion of the Oprah.com website are typed-in text.[3] In May 2009, to assert infringement, ICR claimed that typed-in text on the Oprah.com website infringed the patent. [SUMF #6] In August 2009, again to assert infringement, ICR claimed that typed-in text on the Oprah.com website infringed the patent. [SUMF #5]. In September 2009, Harris himself, speaking as a 30(b)(6) designee for ICR, stated that the typed-in text on the Oprah.com website infringed the '252 Patent. [SUMF #7]

Now, to avoid inequitable conduct, Harris has contradicted ICR's position and his own previous deposition testimony on typed-in text. In his declaration, Harris claims that "[t]ext words from a book or about a book was not the point or subject of any of the inventions claimed in the '252 patent." [Declaration of Mr. Scott Harris at ¶5, Attached to ICR's Statement of Undisputed Material Facts] In light of the contradictory statements made by Harris under oath regarding what the '252 patent does or does not include (and Harris' fickle memory regarding what he remembered about the BarnesandNoble.com website), the fact finder may choose to ignore Harris' self-serving, unverifiable statement that the version of the BarnesandNoble.com website he saw did not include text excerpts.

ICR cannot establish infringement by Harpo unless ICR can convince the Court that typed-in text from a book is covered by the patent claims. However, taking such a position establishes the materiality of Harris' misleading omission concerning the BarnesandNoble.com website. The inequitable solution by ICR and Harris, and yet another fact precluding summary

---

[3] The one exception to this statement is for an excerpt from the book *Say You're One of Them*, an excerpt put on the Oprah.com website in late October 2009, nearly 10 months after the filing date of the lawsuit. The details of Harpo's website are described in detail in Harpo's Claim Construction Brief and Memorandum in Support of Its Motion for Summary Judgment [Docket #93].

judgment, is for ICR and Harris to take contradictory positions about whether the patent claims cover typed-in text from a book.

### B. Harris had the requisite intent required for inequitable conduct

In light of the high materiality of the BarnesandNoble.com website, a correspondingly low amount of intent to deceive is required from Harris. Harris clearly knew of the requirement to provide prior art references to the Examiner. He chose not to supply the BarnesandNoble.com website. The Court can infer intent from these actions, meeting Harpo's requirement for establishing a claim for inequitable conduct sufficient for trial

ICR attempts to set a new standard for intent that would require direct evidence of intent. However, the Federal Circuit has long recognized that "the facts in inequitable conduct cases rarely include direct evidence." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001). Indeed, "smoking gun evidence" is not required in order to establish an intent to deceive, as it "must generally be inferred from the facts and circumstances surrounding the applicant's overall conduct." *Dippin' Dots, Inc. v. Dots*, 476 F.3d 1337, 1345 (Fed. Cir. 2007). This often includes a "showing of acts, the natural consequences of which are presumably intended by the actor." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 (Fed. Cir. 1995). Moreover, where, as here, a patentee "has not proffered a credible explanation for the nondisclosure, [] an inference of deceptive intent may fairly be drawn in the absence of such an explanation." *Bruno Independent Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005).

Here, ICR's summary judgment motion is primarily based upon Harris' self-serving, conclusory declaration that contradicts his previous testimony. This type of evidence can hardly support summary disposition of a claim, and is not sufficient summary judgment evidence. *See Jones v. Merchants National Bank & Trust Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994). Indeed, summary judgment is particularly inappropriate when, as here, credibility is at issue. *Securities & Exchange Comm'n v. Koracorp Inds.*, 575 F.2d 692, 699 (9th Cir.), *cert. denied*, 439 U.S. 953, (1978).

While Harris did submit many other references to the Examiner during the course of the prosecution of the application that led to the '252 Patent, he never submitted any documents related to the BarnesandNoble.com website. [SUMF #4]. In fact, the method Harris used to identify the website is evidence of his intent to deceive.

Rule 56 requires that "each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability . . ." 37 C.F.R. §1.56. The proper way to submit a non-patent reference such as the BarnesandNoble.com website for consideration by the Examiner *is to attach it to an Information Disclosure Statement.* (SUMF #8) 37 CFR 1.98; *see* Manual of Patent Examining Procedure, Seventh Edition §609 (1998). Harris was clearly aware of this requirement, as he submitted many other less-material references. [SUMF #9]. However, Harris did not submit a single page of the BarnesandNoble.com website to the Examiner. [SUMF #4]. Instead, he chose to misstate what was disclosed by the BarnesandNoble.com website. The Court can infer that Harris knew that he could mislead the Examiner about a reference that was material to the prosecution of his patent by omitting the book excerpts from his description and not submitting copies of the website. There is no evidence in the prosecution history that the Examiner ever reviewed the BarnesandNoble.com website.

Harris now claims he never saw the text excerpts from books on the BarnsandNoble.com website. [Declaration of Mr. Scott Harris at ¶4, attached to ICR's Statement of Undisputed Material Facts]. The fact finder in an inequitable conduct case may choose not to believe the Harris' self-serving statement made now, during litigation, ten years after he originally filed his application. *See Molins*, 48 F.3d at 1181 ("The drawing of inferences, particularly in respect of an intent-implicating question . . . is peculiarly within the province of the fact finder that observed the witness").

ICR's reliance upon *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1362 (Fed. Cir. 2008) is misplaced. *Star Scientific* did not involve an inventor/patent attorney

7

who saw prior art, failed to provide a copy and mis-described the prior art. Instead, the Federal Circuit found that the prior art that was the subject of the inequitable conduct charge was merely cumulative and that the applicant provided other evidence to the patent office that contained the same essential information as the letter that was not provided. *Id.* at 1370-71. Further, there was no evidence that the applicant had ever seen the omitted prior art. *Id.* at 1369.

Also, unlike the present case, *Star Scientific* did not involve an inventor, patent attorney, and patent owner who took contradictory positions on the meaning of claims. Rather, in *Star Scientific*, the Federal Circuit found that it was the defendant who concocted a fanciful story of conspiracy. *Id.*

The current situation bears little relationship to the one in *Star Scientific*. Harris had seen the BarnesandNoble.com website – he "describes" it in his patent application. Harris did not provide any part of the BarnesandNoble.com website to the patent office, and ICR has failed to show another reference that makes the disclosure of the BarnesandNoble.com website cumulative. Moreover, there is no conspiracy theory here such as that present in *Star Scientific*. Finally, we have only (1) Harris' unsubstantiated, unverifiable, self-serving statement that contradicts his previous testimony that he had not seen the particular portion of the reference that is now at issue, namely, (2) ICR's unsubstantiated statement implying – in the face of the uncontroverted evidence – that text excerpts of books were not present in the version of the website viewed by Harris, and (3) Harris' ever-changing story of the importance of typed-in text excerpts.

ICR's arguments regarding *Exergen* are also without merit. *Exergen* addresses whether a pleading of inequitable conduct meets the requirements of Rule 9(b), an issue not present in the current case. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1331 (Fed. Cir. 2009). The specific quotation that ICR lifted from *Exergen* dealt with the difference of a corporate entity knowing that a reference existed and a person having knowledge of its contents. *Id.* at 1330. The pleading at issue in the *Exergen* case did not identify that a specific individual knew

8

of the prior art patents that should have been disclosed. Harris does not dispute that he had viewed the website, just, conveniently not the pages that were relevant.

ICR attempts to set a standard that requires only that the inventor plead ignorance in an affidavit of the specific relevant information of a reference to avoid not only a *finding* of inequitable conduct, but merely a *charge* of inequitable conduct. This is contrary to the case law.

This case is more similar to *Dippin' Dots* than either *Exergen* or *Star Scientific*. In *Dippin' Dots*, the applicant touted commercial sales made after the critical date as evidence of commercial success to avoid obviousness, but neglected to provide the Examiner evidence of those same sales made before the critical date. *Dippin' Dots*, 476 F.3d at 1346. Here, Harris opined on only those parts of the reference he wanted the Examiner to see, and then withheld the entire reference from the Examiner, which included the non-cumulative book text-excerpts.

### IV. Conclusion

Harpo has sufficiently established both materiality and intent sufficient for trial on inequitable conduct. Indeed, the record before the court regarding intent and materiality is not amenable to summary resolution. For the reasons stated above, ICR's Motion should not be granted.

9

        Respectfully submitted,

        **HARPO PRODUCTIONS, INC.**

        By: */s/ Michael Locklar*
            One of its attorneys

Charles L. Babcock
Michael Locklar
JACKSON WALKER L.L.P.
1401 McKinney, Ste. 1900
Houston, TX 77010
(713) 752-4200

David P. Sanders
Olivia T. Luk
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2963

## CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of this document to be served on all counsel of record by the Court's electronic filing system on December 22, 2009:

/s/ Michael Locklar
Michael Locklar

5681031v.7