# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ILLINOIS COMPUTER RESEARCH, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08 C 7322 |
| ) | |
| HARPO PRODUCTIONS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Illinois Computer Research, LLC (ICR) has sued Harpo Productions, Inc. (Harpo), contending that portions of Harpo's website relating to Oprah's Book Club infringe ICR's U.S. patent number 7,111,252 (the '252 patent). Harpo denies infringement and asserts the affirmative defenses of inequitable conduct and invalidity of the '252 patent. Harpo has moved for summary judgment on ICR's infringement claim, and ICR has moved for summary judgment on Harpo's inequitable conduct claim. For the reasons stated below, the Court grants Harpo's motion in part and denies it in part and also denies ICR's motion.

### Facts

ICR owns the '252 patent, which was originally granted to its inventor, Scott Harris. The patent is for a method that aims to enhance the experience of shopping on the Internet by allowing users to view a product for sale from various angles. The

1

patent includes claims covering use of the patented technology when shopping for a book: a potential purchaser can view the front and back covers and front and back flaps of a book. The user can also browse pages, but access is limited to a certain predetermined number of pages so the user cannot read the whole book over the Internet for free. When used to browse pages, the invention contemplates the use of a higher degree of resolution for text portions than non-text portions (for example, illustrations or cover art), to ensure that the user can read the text portions.

Harpo is the company that produces "The Oprah Winfrey Show" for television broadcast. Harpo operates a website, Oprah.com ("the website"), which has over 30,000 individual web pages. One section of the website is devoted to web pages pertaining to Oprah's Book Club (OBC), which corresponds to a popular segment on the television show. In the OBC section of the website, users can learn what books have been selected for OBC, read reviews of those books, and discuss the books with other OBC fans. Users can also read excerpts of the OBC selections. Those excerpts are typed in by Harpo employees, not scanned from the actual book.

In its suit against Harpo, ICR alleges that the Harpo website infringes claims 1, 7, 9, 13, and 18 of the '252 patent by allowing users to access excerpts from the books selected for OBC. The claims at issue read as follows:

1. A method, comprising:
    In a server of a network, storing a plurality of images representing pages of a book, said images stored with a resolution effective to enable said book to be read;
    responsive to a request over the network, sending one of said images to a remote node; and
    determining if the request for pages exceeds a certain threshold, and sending said information only if said threshold is not exceeded.
7. A method comprising:

receiving, at a client of a network, information about which of a specified plurality of images to be displayed, each of specified plurality of images showing textual information and at least a plurality of said images showing non-textual information, said textual information representative of contents of a book;

displaying said images responsive to said requests;

displaying a screen tip, indicating what the reaction will be to a specified operation.

9. A method comprising:

receiving, at a client of a network, information about which of a specified plurality of images to be displayed, each of specified plurality of images showing textual information and at least a plurality of said images showing non-textual information, said textual information representative of contents of a book;

displaying said images responsive to said requests; and

wherein each of said images use a graded resolution, which provides readable resolution for readable parts and a different resolution for non-readable parts.

13. A method comprising:

receiving, at a client of a network, information about which of a specified plurality of images to be displayed, each of specified plurality of images showing textual information and at least a plurality of said images showing non-textual information, said textual information representative of contents of an entertainment media;

displaying said images responsive to said requests; and

detecting a number of pages that have been read, and limiting use of said number of pages.

18. An apparatus comprising:

a computer, providing limited pages of books that can be viewed over a publically available network, and including a connection to the network, and which receives information indicative of at least one desired page of a book over the connection to the network; and returns information indicative of only limited images of pages of the book based on said information; and

wherein said computer limits a number of pages that can be displayed.

'252 Patent, cols. 7:44-53; 8:1-10, 13-19, 39-50; 9:1-10.

Harpo asserted an inequitable conduct counterclaim against ICR, arguing that Harris, the inventor, misrepresented the prior art to the Patent and Trademark Office (PTO) during the prosecution of the '252 patent. Specifically, Harpo alleges that Harris failed to disclose to the PTO the fact that BarnesandNoble.com, the web store of

bookseller Barnes and Noble, allowed users to read excerpts of books for sale on that site at the time that Harris applied for the '252 patent. This, Harpo contends, violated Harris' duty of disclosure and justifies invalidation of the '252 patent.

Harpo has moved for summary judgment on ICR's infringement claim. Harpo contends that the OBC section of the website does not infringe any disputed claim of the '252 patent. It argues that the excerpts it provides of the OBC books on its website are typed-in sections of text, not images of the actual pages of a physical book, and that its website does not have any system for limiting the number of pages a user can view, does not have screen tips, and does not employ graded resolution.

ICR has moved for summary judgment on Harpo's inequitable conduct claim. It contends that at the time Harris applied for the patent, he was unaware of the feature on BarnesandNoble.com that allowed users to read excerpts from books for sale and thus lacked the requisite intent to deceive the PTO.

**Discussion**

Summary judgment is appropriate in a patent case, as in any other case, when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Avia Grp. Int'l, Inc., v. L.A. Gear Calif., Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1998). In determining whether there is a genuine issue of material fact, the Court views the evidence and draws reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A patent infringement analysis entails two steps. The first, claim construction, is a question of law requiring the Court to determine the meaning and scope of the patent

4

claims alleged to be infringed. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995). Second, the Court must compare the properly construed claims to the allegedly infringing product – a question of fact. *See, e.g.*, *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). A court may resolve the issue of infringement on summary judgment only if "no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004).

### A.    Claim analysis

The parties dispute the proper construction of terms and phrases related to images of book pages, terms related to limited delivery of pages, and the terms "screen tip" and "graded resolution." In construing a patent, the words of a claim are given their ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the relevant field at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). In determining the meaning of a disputed claim term, a court looks to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

Before considering extrinsic evidence, a court should first examine the intrinsic evidence: the context in which the term is used in the asserted claim; the differences among the claims; the written description contained in the patent specification; and, if it

5

is in evidence, the patent's prosecution history. *Id.* at 1314-17. The intrinsic record "usually provides the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the [relevant field] at the time of the invention." *V-Formation, Inc. v. Bennetton Grp. SpA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005).

    1.    *Terms relating to images representing pages of a book.*

The parties dispute the proper construction of the term "images representing pages of a book" used in claim 1 and the term "plurality of images . . . showing textual information" used in claims 7, 9, and 13. Harpo asserts that these terms require a digital image of the actual pages of a physical book (such as a digital photograph of the book's pages). Harpo's proposed construction is "digital representations of specified real pages of a physical book stored on a file server." Harpo Mem. in Supp. of Summ. J. at 13. ICR contends that the appropriate construction of the term is "a representation of the content of the actual pages of a book." ICR Resp. to Mot. for Summ. J. at 9.

In support of its proposed construction, Harpo argues that the specification of the '252 patent includes only one embodiment of the technology as applied to books: digital images of a physical book. Harpo Mem. in Supp. of Summ. J. at 13. Because the specification only includes one embodiment, Harpo argues, the claims should be construed to be restricted to that embodiment. *Id.* at 13-14.

Harpo is correct that claims must be read in the context of the specification. *Phillips*, 415 F.3d at 1315. However, the "particular embodiments appearing in a written description will not be used to limit claim language that has a broader effect." *Innova*, 381 F.3d at 1117. A claim is limited to the particular embodiment(s) in the specification

6

only when "the intrinsic evidence shows that the patentee distinguished [it] from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention." *Edwards Lifesciences LLC v. Cook, Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009) (citing *CSS Fitness, Inc. v. Brunswick, Corp.*, 288 F.3d 1359, 1366-67 (Fed. Cir. 2002)).

Harpo cites *SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001), to support its view that ICR's claim should be limited to images of the actual pages of a physical book as referenced in the specification. In *SciMed*, the Federal Circuit affirmed the claim construction by the lower court, which had limited the patent to the embodiment described in the specification. In *SciMed*, however, the court found that the specification "expressly limits all embodiments of the claimed invention." The patent in this case includes no such express limitation.

Harpo also relies on *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322 (Fed. Cir. 2009). In *Edwards*, an alleged infringer argued that a patent for grafts should be restricted to intraluminal grafts because those were the only grafts described in the specification. The court agreed. In doing so, however, it noted that "the specification consistently [used] the words 'graft' and 'intraluminal graft' interchangeably," the claim language itself supported that interpretation, and "the preferred embodiment [was] described in the specification as the invention itself." *Id*. at 1329-30. Those factors are not present here. The Court therefore follows *Innova*'s guidance and declines to limit the claims to the preferred embodiment described in the specification.

The Court also notes that elsewhere in the specification, when discussing an embodiment involving an aspirin bottle for sale, the inventor stated that a

"representation" of the bottle is not limited to a photograph of the product but could include a drawing made by a computer program. '252 patent, col. 3:17-22. This, as ICR argues, undermines Harpo's argument that the disputed claim language covers only an actual image of the pages of a physical book.

Claim 1 requires "images *representing* pages of a book." '252 patent, col. 7:44-53 (emphasis added). This language does not support the limitation Harpo seeks; the claim describes a "representation," a term that covers more ground than an image of actual pages of a physical book. The Court concludes that the proper construction of the phrase "images representing pages of a book" is not limited to photographs of the pages of a physical book. Rather, it includes any image that includes contents from a book's pages. The correct construction is "images that show content from the pages of a book."

Harpo similarly argues that the language "plurality of images . . . showing textual information . . . representative of contents of a book" in claims 7, 9 and 13 of the '252 patent requires a digital representation of text from specified real pages of a physical book. Harpo's argument on this language is even weaker than its argument regarding claim 1. The phrase does not support an interpretation that is limited to what would amount to a photograph of the actual pages of a physical book; this would read "textual information . . . representative of contents" out of the claim. The proper construction of the term is "more than one image that includes textual content from a book."

Harpo also asserts that the language of claim 18, properly construed, requires images to be images of the actual pages of a physical book. Claim 18 states:

An apparatus comprising: a computer, providing limited pages of books that can

> be viewed over a publically available network, and including a connection to the network, and which receives information indicative of at least one desired page of a book over the connection to the network; and returns information indicative of only limited images of pages of the book based on said information; and wherein said computer limits a number of pages that can be displayed.

'252 Patent, col. 9:1-10. Harpo contends that the proper construction of the phrase "receives information indicative of at least one desired page of a book . . . and returns information indicative of only limited images of pages of the book based on said information" is "a request for a page image made over a network specifying a real page of a physical book." Harpo Mem. in Supp. of Summ. J. at 17. This would read the words "indicative of" out of the claim, which is inappropriate. "Information indicative of [a] page" cannot properly be limited to a digital image showing an actual physical page. The phrase is properly read as referring to "images that include content from ages of an actual book." The rest of the language of this portion of claim 18 is self-explanatory and does not require further construction.

### 2. *Terms relating to limits on the number of pages that can be obtained*

The '252 patent includes several claims that describe a method for limiting the number of pages of a book a user can obtain, to prevent the user from reading an entire book for free. The parties dispute the proper construction of several terms relating to these limitations.

Claim 1 includes the phrase "determining if the request for pages exceeds a certain threshold." Harpo suggests that the correct construction of that term is "deciding whether a counter that contains a value of the number of page image requests made by a user is greater than an upper limit." Harpo Mem. in Supp. of Summ. J. at 9. ICR argues that this language does not require the use of a counter.

Harpo argues that the only embodiment described in the specification includes the use of a counter and that the claim is therefore limited to methods that use a counter. This argument fails. As discussed above, claims are not limited simply because there is only one embodiment described in the specification. *Innova*, 381 F.3d at 1117.

In addition, as ICR argues, the specification describes embodiments that determine whether the limit has been reached without using a counter, such as the use of HTML code and encryption. '252 Patent, col. 7:33-39. ICR also notes that claim 2, which is dependent on claim 1, *does* require a counter. Under the doctrine of claim differentiation, "limitations stated in dependent claims are not to be read into the independent claim from which they depend." *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999). Dependent claim 2 expressly requires the use of a counter; thus, interpreting independent claim 1 to require a counter when it does not include that term would be improper. The Court concludes that "determining whether a request for pages exceeds a certain threshold" means what it says; no further definition is required. The phrase, however, is not properly construed to require use of a counter.

The parties also dispute the meaning of the phrase "detecting a number of pages that have been read and limiting use of the number of pages" in Claim 13. Harpo asserts that this language should be construed to mean "discovering whether a counter that contains a value of the number of page images of a physical book that have been read is greater than the upper limit." Harpo notes that during prosecution of the patent, Harris stated that the subject matter of this claim "was extensively discussed with

respect to claim 85 [now claim 1]." Therefore, Harpo asserts the same arguments for claim 13 as it did for claim 1. Harpo Mem. in Supp. of Summ. J. at 21-22.

ICR counters that the correct construction is "detecting (or determining) the number of pages that have been read and limiting the additional number of pages," and it likewise reasserts the arguments it raised with regard to claim 1. ICR Resp. to Mot. for Summ. J. at 16-17. For the reasons described above with regard to claim 1, the Court finds that the correct construction of "detecting a number of pages that have been read and limiting use of the number of pages" does not require use of a counter. The proper construction is "determining how many pages have been read and refusing to send additional pages if an upper threshold has been reached."

Claim 18 includes the phrase "limits the number of pages that can be displayed." Harpo argues that this, too, necessarily requires the use of a counter. For the reasons stated above, the Court disagrees. The phrase "limits the number of pages that can be displayed" is sufficiently clear on its face that further definition is not required. Nothing in the record, however, calls for a construction that requires the use of a counter.

*3. Terms related to resolution*

The parties also dispute the proper construction of the terms "resolution" and "graded resolution" as used in the '252 patent. Claim 1 includes a requirement that an image be stored with a "resolution effective to enable said book to be read." '252 Patent col. 7:46-47. Harpo argues that the proper construction of this term is "a value stored in an image file that is used to determine if a stored image is of sufficient pixel density fo reading textual information from images of real pages of a physical book." The Court has already rejected Harpo's contentions that the claim language requires

images of real pages of a physical book. The dispute therefore turns on the meaning of the term "resolution." The same term is disputed in claim 9, which includes the language "graded resolution."

The intrinsic evidence does not include a definition of the word "resolution." Though a court should first look to intrinsic evidence to determine the appropriate construction of a claim term, a court may rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (citing *C.R. Bard. Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004).

Harpo contends that the correct construction of resolution is the definition contained in the Microsoft Press Computer User's dictionary. Harpo Mem. in Supp. of Summ. J. at 25. That dictionary states: "the resolution of a video display is taken as the total number of pixels displayed horizontally and vertically." *Id*., Ex E at 299. "Graded resolution," Harpo argues, therefore means "higher pixel density for readable parts of a book image than is provided for ornamental or non-readable parts of a book image." *Id.* at 25.

ICR counters that the appropriate construction of "resolution" is "sharpness to the eye." ICR Resp. to Mot. for Summ. J. at 13. "Graded resolution," ICR argues, is thus properly construed as "variations in image sharpness as perceived by the eye." *Id.* at 18. In support of this construction, ICR offers the declaration of J. Carl Cooper, the general manager of an intellectual property licensing company with extensive experience in video systems and audio and video broadcasting. ICR's L.R. 56.1 Stat., Ex. B. Cooper states that "the term resolution when used in relation to images . . . has

meaning to persons knowledgeable in the field of television, computer monitor design, and signal processing . . . a short but accurate meaning of resolution in the context of an electronic display of an image means the sharpness of an image to the eye of the viewer." *Id*. ¶ 5.

In its reply, Harpo argues that ICR's proposed construction is ambiguous and therefore unacceptable. Harpo Repl. at 13. Harpo points out that "the eye of the viewer" is not a uniform standard, and that some viewers may be able to perceive differences in sharpness between two images but others may not. Further, Harpo argues, ICR's reference to "sharpness" is inaccurate. Harpo offers the declaration of Stephen Gray, a consultant with extensive experience in computers and software design and development, who states that "sharpness is a *combination* of resolution and edge contrast" and is therefore different from resolution. *Id.*, Ex. B ¶ 9 (emphasis in original).

Based on its review of the parties' submission, the Court is persuaded that there likely is more to resolution (as that term is used in claims 1 and 9) than simply a pixel count and that Harpo's proposed construction is thus inadequate. The Court is also persuaded to some extent that the term sharpness, at least in a technical sense, may involve resolution-plus. Thus ICR's proposed construction may also be inappropriate. It is also unclear to the Court, however, whether the term, when read in context, was used in a technical sense. The Court thus defers for the time being construction of the terms "resolution" and "graded resolution." Further proceedings will be required, possibly including a hearing. Because, as described below, the Court concludes that Harpo's entitlement to summary judgment does not turn on construction of this term,

construction may be deferred to a later date prior to trial.

   *4.   Screen Tip*

Claim 7 of the '252 patent includes the language "displaying a screen tip, indicating what the reaction will be to a specified operation." This feature allows a user to hover her cursor over a directional button on the screen (an arrow, for example), which causes a text box to appear telling the user what will happen if the button is clicked (such as "click here to turn the book over.")

Harpo argues that "screen tip" should be construed to mean "an indication that aids a user in determining how an operation will be handled by the client computer when viewing or browsing the images representing contents of a physical book." The Court has already rejected Harpo's arguments that the '252 patent requires images to be real pages of a physical book and thus need not revisit that argument here. ICR contends that claim 7 clearly defines "screen tip" in the language of the claim and that no further construction is necessary. The Court agrees. Claim 7 clearly defines screen tip as "indicating what the reaction will be to a specified operation." No further construction is necessary.

**B.   Infringement**

Having construed the disputed claim language that requires further construction, the Court turns to Harpo's motion for summary judgment on ICR's claim of infringement. To evaluate a claim for infringement, a court must compare the claims, as construed, to the accused device. *Bayer AG*, 212 F.3d at 1247. Infringement requires the patent holder to prove that the accused device contains each limitation of the asserted claim(s). *Id.* "If any limitation is absent from the accused device, there is

no literal infringement as a matter of law." Id.

### 1. Claims 1, 13, and 18

Harpo's arguments for why it has not infringed claims 1, 13 and 18 depend on its proposed construction of the phrases "images representing pages of a book" and "determining if the request for pages exceeds a certain threshold." It argues that its excerpts are not "images" because they are typed in and not scanned and that the OBC section of the website does not use a counter to limit a user's access to pages. The Court has rejected Harpo's proposed constructions of these phrases. Harpo's website allows a user to see on a computer screen an image representing textual content from a book. In addition, the user's access is limited to those pages that Harpo has entered into the website. Given the construction of claim terms adopted by the Court, a reasonable jury could find that the OBC section of the Harpo website infringes these claims. Harpo's motion for summary judgment is therefore denied as to claims 1, 13 and 18.

### 2. Claim 9 (graded resolution)

Claim 9 discloses "[a] method comprising: receiving, at a client of a network, information about which of a specified plurality of images to be displayed, each of specified plurality of images showing textual information and at least a plurality of said images showing non-textual information, said textual information representative of contents of a book; displaying said images responsive to said requests; and wherein each of said images use a graded resolution, which provides readable resolution for readable parts and a different resolution for non-readable parts." '252 patent, col. 8:13-19.

Harpo argues that none of the images used in conjunction with the OBC section of its website has a higher pixel density for readable parts of the book image than is provided for non-readable parts of a book image. Harpo Mem. in Supp. of Summ. J. at 34. Harpo contends that because Harpo employees type in the excerpts of the book that are displayed on the website, the excerpt is "text" and "does not have a resolution." Harpo Mem. in Supp. of Summ. J. Ex B ¶ 23. Harpo has offered no evidence, however, regarding the resolution of the images it uses on the OBC section of the website or the resolution of the typed-in book excerpts as they appear on the user's screen. ICR argues that on the OBC section of the website, images representing the front page of a book are fuzzier, and thus of lower resolution, than the clear, readable images representing the text of the book. ICR Resp. to Mot. for Summ. J. at 22.

The scant evidence in the record on this point is insufficient to allow a reasonable jury to conclude that Harpo does not use graded resolution for any of the images relating to book excerpts in the OBC section of its website. This would be the case even had the Court adopted Harpo's propsed construction of "resolution" and "graded resolution." The Court therefore denies Harpo's motion for summary judgment as to claim 9.

    3. *Claim 7 (screen tip)*

Claim 7 discloses "[a] method comprising: receiving, at a client of a network, information about which of a specified plurality of images to be displayed, each of a specified plurality of images showing textual information and at least a plurality of said images showing non-textual information, said textual information representative of contents of a book; displaying said images responsive to said requests; displaying a

screen tip indicating what the reaction will be to a specified operation." '252 Patent, col. 8:1-10.

ICR alleges that Harpo infringes claim 7 because when a user hovers over the image of the front cover of a book on the OBC section of the website, a text box pops up showing the name of the book. Harpo contends that it does not infringe claim 7 because the described feature of the OBC section of the website is not a screen tip, but rather is an "alt tag" that identifies the name of the book for users who are visually impaired.

Claim 7 clearly requires the "screen tip" to "indicat[e] what the reaction will be to a specified operation." The allegedly infringing feature of the OBC section of the Oprah.com site does not relate to any operation, and it does not tell a user what the reaction would be if a user engaged in a particular operation. Rather, it simply provides the title of the book in text format if a user's cursor hovers over the image. There is nothing in the record that would allow a reasonable jury to conclude, therefore, that Harpo's use of this feature infringes claim 7 of the '252 patent. For this reason, the Court grants Harpo's motion for summary judgment as to claim 7.

**C.    Inequitable conduct claim**

Harpo alleges that Scott Harris, the inventor of the '252 patent, purposely misled the PTO when applying for the patent. Specifically, Harpo contends that Harris violated his duty of disclosure by failing to notify the PTO that at the time of his application another website, BarnesandNoble.com, allowed users to read excerpts of books online.

The burden of proving inequitable conduct lies with the accused infringer. *Ulead Sys., Inc. v. Lex Computer Mgmt. Corp.*, 351 F.3d 1139, 1146 (Fed. Cir. 2003). To

demonstrate inequitable conduct, the accused infringer must prove that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the PTO. *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1365 (Fed. Cir. 2007).

Information is material "when a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1297 (Fed. Cir. 2008). "Because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence." *Cargill*, 476 F.3d at 1366. An inference of intent must "be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Id.* Because the penalty for inequitable conduct is severe – loss of the entire patent – the Federal Circuit has held that the burden of proof must be strictly enforced, and materiality and intent to deceive must be proven by clear and convincing evidence. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008).

If Harris did in fact withhold information that the subject of his patent application – the ability to read limited excerpts of books online – was already being used by BarnesandNoble.com at the time of his application, that arguably could be found to be material. ICR contends that Harris did not know of that feature of the BarnesandNoble.com website when he applied for the '252 patent and thus lacked the intent to deceive the PTO. Harpo argues that Harris' claim is not credible, especially because he made specific reference in the '252 patent to the BarnesandNoble.com website. '252 Patent, col. 5:12-19.

18

Harpo has raised a genuine issue regarding credibility that can be determined only after a trial. The Court therefore denies ICR's motion for summary judgment on Harpo's inequitable conduct claim.

**Conclusion**

For the foregoing reasons, the Court grants Harpo's motion for summary judgment [docket no. 92] as to claim 7 of the '252 patent, but otherwise denies the motion. The Court also denies ICR's motion for summary judgment on the inequitable conduct defense [docket no. 88]. The case is set for a status hearing on March 31, 2010 at 9:30 a.m. for purpose of setting a hearing date regarding the remaining claim construction issue, as well as a trial date (the Court proposes a date of June 1, 2010). Counsel should be prepared to address the likely length of trial.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 24, 2010