**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 08 C 7322 |
| ) | |
| **HARPO PRODUCTIONS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Illinois Computer Research, LLC (ICR) has sued Harpo Productions, Inc. (Harpo), contending that portions of Harpo's website relating to Oprah's Book Club infringe ICR's U.S. patent number 7,111,252 (the '252 patent). Harpo denies infringement and asserts the affirmative defenses of inequitable conduct and invalidity of the '252 patent.

On March 24, 2010, the Court denied ICR's motion for summary judgment on an inequitable conduct defense, and granted in part and denied in part Harpo's motion for summary judgment as to infringement of the '252 patent. *Illinois Computer Research, LLC v. Harpo Prods., Inc*, No. 08 C 7322, --- F. Supp. 2d ----, 2010 WL 1253973 (N.D. Ill. Mar. 24, 2010). In that decision, the Court deferred construction of the terms "resolution" and "graded resolution" as used in claims 1 and 9 of the '252 patent and ordered an evidentiary hearing on the matter. The Court conducted the evidentiary

hearing on May 10, 2010.  This decision contains the Court's ruling on the construction of the terms "resolution" and "graded resolution" in the '252 patent.

## Facts

ICR owns the '252 patent, for a method that aims to enhance the experience of shopping on the Internet by allowing users to view a product for sale from various angles.  The patent includes claims for an embodiment that allows a potential purchaser to view the front and back covers and front and back flaps of a book and to browse the text of its pages.  When used to browse, the invention contemplates the use of a higher degree of resolution for text than for material other than text, for example, illustrations or cover art.

Harpo, the company that produces "The Oprah Winfrey Show," operates a website.  One section of the website is devoted to web pages pertaining to Oprah's Book Club (OBC), where users can, among other things, read excerpts of the OBC selections.  Those excerpts are typed in by Harpo employees; they are not scanned page of the actual book.

ICR alleges that the Harpo website infringes the '252 patent by allowing users to access excerpts from the books selected for OBC.  At issue in this decision are the terms "resolution" and "graded resolution" as used in claims 1 and 9 of the patent.  These claims read as follows:

1. A method, comprising:

    In a server of a network, storing a plurality of images representing pages of a book, said images stored with a resolution effective to enable said book to be read;
    responsive to a request over the network, sending one of said images to a remote node; and

>    determining if the request for pages exceeds a certain threshold, and sending said information only if said threshold is not exceeded.
>
> 9. A method comprising:
>
>    receiving, at a client of a network, information about which of a specified plurality of images to be displayed, each of specified plurality of images showing textual information and at least a plurality of said images showing non-textual information, said textual information representative of contents of a book;
>    displaying said images responsive to said requests; and
>    wherein each of said images use a graded resolution, which provides readable resolution for readable parts and a different resolution for non-readable parts.

'252 Patent, cols. 7:44-53 & 8:13-19.

**A.      Proposed constructions**

Claim 1 describes an image stored with a "resolution effective to enable said book to be read." '252 Patent, col. 7:46-47. In its original claim construction brief, Harpo argued that the proper construction of "resolution effective to enable said book to be read" is "a value stored in an image file that is used to determine if a stored image is of sufficient pixel density for reading textual information from images of real pages of a physical book." Def.'s Mem. on Claim Constr. (docket no. 93) at 9. In its March 24 decision, the Court rejected Harpo's contention that the claim language covers only images of the actual pages of a physical book and therefore rejected Harpo's proposed construction.

In the claim construction chart submitted at the May 10 evidentiary hearing, Harpo offered a new proposed construction of "resolution": "pixel density." ICR maintains, as it has all along, that the correct construction is "sharpness to the eye." For the term "graded resolution," Harpo proposes "variations in pixel density"; ICR

proposes "variations in image sharpness as perceived by the eye." Joint Claim Construction Chart, Evid. Hrg. Ex. 1.

**B.    Gray Testimony**

At the evidentiary hearing, Harpo presented testimony from Stephen Gray, a computer technology consultant. Gray testified to the basic functioning of a website, including an explanation of how website content and images are stored on servers and rendered as HTML files that are viewable by browser software. During his testimony, Gray was presented with an example of a page from the Oprah.com website that showed a picture of the cover and an excerpt from an OBC book. The page contained an image of the book cover, which Gray explained is stored on a server as an image file. When image files are stored on a server, Gray testified, they include a resolution, which determines the pixel density of the image being stored. He contrasted this with the excerpt of the book as presented on the OBC section of the Oprah.com website, which he described as "actual text," and "different than an image."

Gray testified that the proper construction of the term resolution as used in claims 1 and 9 must reflect the fact that the term is used to refer to images stored on a server. He testified that in his view, the Microsoft Computer User's Dictionary correctly defines resolution when it states: "the resolution of a video display is taken as the total number of pixels displayed horizontally and vertically." Gray concluded that the correct construction of resolution as used in claims 1 and 9 is "pixel density."

In its briefs on claim construction, ICR submitted the affidavit of an expert, J. Carl Cooper. Cooper expressed his opinion that resolution is "sharpness . . . to the eye of the viewer." Pl.'s Resp. to Def.'s LR 56.1 Stat. (docket no. 98), Ex. 2 at 6. Gray

testified that he believed that definition did not fit with the context of the '252 patent because "the claims talk about resolution being stored with the image," and the reference to the human eye's perception doesn't "[map] back to something that is stored with the image on a server."

## Discussion

Claim construction is a question of law requiring the Court to determine the meaning and scope of the patent claims alleged to be infringed. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995). A court construing a patent should give the words of a claim their ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the relevant field at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). In determining the meaning of a disputed claim term, a court looks to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

Before considering any extrinsic evidence to construe a claim, a court should first examine the intrinsic evidence. This includes the context in which the term is used in the asserted claim; differences among the claims; the written description contained in the patent specification; and, if it is in evidence, the patent's prosecution history. *Id.* at 1314-17. The intrinsic record "usually provides the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the [relevant field] at the time of the invention." *V-Formation, Inc. v. Bennetton Grp. SpA*,

401 F.3d 1307, 1310 (Fed. Cir. 2005).

Though a court's task is to establish a term's meaning to a person of ordinary skill in the relevant field, the scope of inquiry is not unfettered: it must do so "in the context of the written description and the prosecution history," *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005).

The specification of the '252 patent provides helpful context. In the description of a preferred embodiment, the specification states: "[t]he final image can also be graduated. It can include lower resolution portions which show the ornamental portions of the object, and higher-resolution portions which show the readable portions of the object. In one embodiment, the higher-resolution portions are formed from ASCII text." '252 Patent, col. 2:46-52. The '252 patent also describes an embodiment that consists of different "zones" of pictures for different portions of a product being displaced, with "a highly compressed JPEG image portion for the ornamental part, a less compressed JPEG portion for more important parts, and finer resolution parts. The fine resolution part can be ASCII or rich text format type textual information." *Id*., cols. 2:67-67 & 3:1-3.

ASCII is a text format, not an image. In response to questions at the evidentiary hearing, Gray testified that ASCII text is not expressed or described in pixels. Because the specification of the '252 patent includes ASCII text as an example of high or fine resolution, the construction of resolution as used in the patent claims must be broad enough to include ASCII text as well as images. It would be erroneous to construe resolution in a way that excludes an embodiment described in the specification. *See, e.g., Medrad*, 401 F.3d at 1319.

6

In short, as it is used in the '252 patent, resolution is not a concept limited to images. The Court therefore rejects Harpo's contention that resolution is a term that applies only the pixel density with which images are stored on a server.

Pixel density certainly plays a role in resolution. Both parties' experts noted that the term resolution is often applied to monitors and video displays. Monitors that display web pages do so in pixels, and the term resolution in the context of video display is, in fact, measured in pixel density. This is consistent with the Microsoft Computer User's Dictionary definition cited by Harpo, which states that "the resolution *of a video display* is taken as the total number of pixels displayed horizontally and vertically." Def.'s Mem. on Claim Constr., Ex. E. (emphasis added). The parties agree that resolution on a video display is measured in pixels, and the Court sees no reason to find otherwise.

As used in the '252 patent, however, the word resolution is used in the context of images or representations that are displayed, not the monitor or video screen that displays that image. Harpo's proposed construction, "pixel density," does not fully capture the concept of resolution as it is used in the '252 patent, for the reasons the Court has described.

The Court also rejects Harpo's argument that the term resolution applies only to images (in image formats such as JPEG) as they are stored on a server. The '252 patent specification makes it clear that text, including ASCII text, can be one "fine resolution" way to display readable parts of a product's packaging. '252 Patent, col. 4:1-2. The Court is persuaded, based on the intrinsic evidence, that resolution as used in the '252 patent must be defined by reference to sharpness or clarity to the viewer

7

rather than by reference to pixel density. To the extent that Gray's affidavit and hearing testimony are to the contrary, the Court rejects them because they fail to fully take account of context, including the specification's description of preferred embodiments.

Harpo also objects to ICR's proposed construction, "sharpness to the eye," on the ground that eyesight varies, and thus what one can perceive differs from person to person. The Court accepts this point. That does not mean, however, that ICR's construction should be rejected out of hand. The Court concludes that the proper construction of the term resolution, as it is used in the claims at issue, is "sharpness or clarity to a person with normal vision." The term graded resolution is thus properly construed as "variations in sharpness or clarity as perceived by a person with normal vision." This, the Court finds, is how a person with ordinary skill in the field would read the terms in light of the context in which they are used and in light of the specification.

## Conclusion

The Court construes the remaining disputed terms of the '252 patent as described above.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 20, 2010