**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ILLINOIS COMPUTER RESEARCH, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 08 C 7322** |
| | ) | |
| **HARPO PRODUCTIONS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiff Illinois Computer Research, LLC (ICR) has moved to strike twenty-five

newly-disclosed witnesses identified in amended Rule 26(a)(1) disclosures that

defendant Harpo Productions, Inc. (Harpo) served on April 30, 2010.  For the reasons

stated below, the Court grants ICR's motion in part.[1]

**Background**

This is a patent infringement suit, which ICR filed in December 2008.  ICR

contends that Harpo infringed U.S. Patent No. 7,111,252, entitled "Enhancing Touch

And Feel On The Internet."  Harpo denies that it infringed the patent.  It also contends

that the patent is invalid and that it is unenforceable because the inventor, Scott Harris,

engaged in inequitable conduct during the prosecution of the patent.  ICR also sued

Sony Electronics, Inc., but it dismissed its claims against Sony in late July 2009.

---

[1] On May 18, 2010, the Court issued a brief order in which it ruled on ICR's
motion, stating that a written decision explaining the ruling would follow.  This is that
decision.

1.      **The March 16, 2009 scheduling order**

At the initial Rule 16(b) conference, held on February 25, 2009, the Court

advised the parties that it intended to apply this District's not-yet-adopted Local Patent

Rules (LPR).[2]  As of the date of the Rule 16(b) conference, the LPR were in the final

stages of the drafting process and had not yet been approved by the judges of this

District.  The LPR were later approved with some relatively modest changes and

formally took effect in the fall of 2009.

The Court entered a scheduling order dated March 16, 2009 that required each

party to make its Rule 26(a)(1) disclosures – as supplemented by the LPR – by March

11, 2009 (they had already made the disclosures at that point).  The scheduling order

also included dates for the parties to exchange initial and final contentions regarding

infringement, invalidity, and unenforceability, and, following the final contentions, to

exchange proposed constructions of potentially disputed terms of the claims of the

patent in suit.  The scheduling order also set schedules for briefing claim construction;

for exchanging expert witness disclosures under Rule 26(a)(2) following a claim

construction ruling; and for filing dispositive motions after the completion of expert

depositions.

With regard to fact discovery, the March 16, 2009 scheduling order stated that

"[f]act discovery shall commence on March 11, 2009 and shall be completed by

October 28, 2009.  Fact discovery may resume upon entry of a claim construction ruling

and shall end forty-two (42) days after entry of the claim construction ruling."  Pl. Mot.,

_____

[2] The undersigned judge chaired the committee that drafted the proposed LPR
and accompanying commentary.

2

Ex. A (Mar. 16, 2009 Scheduling Order) ¶ 1a.  The parties dispute the interpretation of this term of the scheduling order.

## 2.   Harpo's and Sony's initial Rule 26(a)(1) disclosures

In its Rule 26(a)(1) disclosures served in early March 2009, Harpo disclosed only four persons that it contended were likely to have discoverable information:  Josh London, Kalpesh Patel, Jennifer Sverns, and Gene Swytnyk.  All four were associated with Harpo and were described as having information regarding web pages associated with the "Oprah's Book Club" portion of the Oprah.com website.  *See* Pl. Mot., Ex. B at 1-2.

Sony's Rule 26(a)(1) disclosures identified seven witnesses:  four Sony employees (Don Kossman, Joe Nakata, Christian Smythe, and Brenda Owens); Scott Harris, the inventor of the '252 patent; and two entities, Barnes & Noble and Fish & Richardson.  The latter entities were identified as likely having information about the validity of the '252 patent.  *See* Def. Resp., Ex. A.

Sony incorporated by reference Harpo's Rule 26(a)(1) disclosures, as well as ICR's.  *See id.* at 1.  Harpo, however, did not incorporate, adopt or otherwise reference Sony's Rule 26(a)(1) disclosures.  *See* Pl. Mot., Ex. B.

As the Court has indicated, ICR dropped its claims against Sony in late July 2009.  Following that date, Harpo did not amend or supplement its Rule 26(a)(1) disclosures to include the witnesses identified by Sony.  In fact, Harpo did not amend its Rule 26(a)(1) disclosures at any time prior to the October 28, 2009 close of fact discovery, or thereafter, until just recently.

**3.      Modification of the scheduling order; the
claim construction / summary judgment ruling**

In mid-October 2009, Harpo – with ICR's concurrence – asked the Court to

decide claim construction in conjunction with summary judgment and to advance the

summary judgment process so that it would precede expert disclosures and expert

discovery.  Harpo advised the Court that there were only a small number of significant

claim construction issues and that the process it proposed would streamline matters.

Harpo's motion sought a short extension of time for filing its opening claim construction

brief so that it could file a summary judgment motion on that date, stating that this "will

not prolong the overall schedule in this case in any material way, because the modified

format suggested by Harpo will advance the Court's ultimate ruling on summary

judgment."  Unopposed Mot. to Modify Sched. Order ¶ 6.  The Court agreed to the

modification of the scheduling order.

In mid-November 2009, Harpo moved for summary judgment on the issue of

infringement, and ICR moved for summary judgment on Harpo's inequitable conduct

defense.  The parties' papers on Harpo's motion addressed in detail the disputed claim

construction issues.

On March 24, 2010, the Court issued a decision in which it construed all but one

of the disputed claim terms and denied both Harpo's and ICR's motions for summary

judgment.  *See Ill. Computer Research, LLC v. Harpo Productions, Inc.*, No. 08 C 7322,

2010 WL 1253973 (N.D. Ill. Mar. 24, 2010).  The Court held a hearing on the remaining

claim construction issue on May 10, 2010 and decided that issue a short time

thereafter.

4

In the summary judgment ruling, the Court set the case for a status hearing on April 1, 2010 for the purpose of setting a trial date.  The Court stated in the order that it was proposing a trial date of June 1, 2010.

**4.     The April 1, 2010 status hearing**

At the April 1 status hearing, Harpo's counsel stated that Harpo would be ready for trial on the June 1 date the Court had proposed.  ICR's counsel reminded the Court, however, that it had deferred expert discovery until after resolution of the summary judgment motions.  The Court set deadlines of April 22, 2010 for Rule 26(a)(2) expert witness disclosures and May 13, 2010 for rebuttal disclosures, and it ordered that expert discovery be completed by June 3, 2010.  The Court advised the parties that these were firm dates.  *See* April 1, 2010 Tr. 7.

Because of the need to conduct expert discovery, the Court set the case for trial on July 26, 2010 rather than June 1 and set a date of July 1, 2010 for filing the final pretrial order.  The Court also set a hearing date of May 10, 2010 for the last remaining claim construction issue.

During the extended discussion about scheduling at the April 1 status hearing, Harpo's counsel expressed no concern regarding the viability of the July 26 trial date. (Indeed, as the Court has indicated, Harpo's counsel said that Harpo would be ready even earlier, by the June 1 date the Court had proposed.)  Harpo's counsel did not suggest at the hearing that Harpo needed to do further fact discovery.  Harpo's counsel likewise did not hint that Harpo was considering supplementing its Rule 26(a)(1) disclosures.

5.      **Harpo's amended Rule 26(a)(1) disclosures**

As indicated earlier, the Court issued its summary judgment / claim construction ruling on March 24, 2010.  Thirty-seven days later, on April 30, 2010 (four weeks after the April 1 status hearing), Harpo served amended Rule 26(a)(1) disclosures.  *See* Pl. Mot., Ex. C at 9.

Harpo's amended disclosures eliminated three of the four persons it had identified in the initial disclosures – all but Josh London – and named thirty-one witnesses that Harpo had not previously identified in its Rule 26(a)(1) disclosures.  Not counting its four experts and two other persons to whom ICR does not object (Scott Harris and James Parker), Harpo identified twenty-five new persons or entities with discoverable information that Harpo now contends support its claims or defenses.

The twenty-five newly-disclosed persons or entities may be categorized as follows.  (The Court notes that each listing of an entity may well entail multiple individual witnesses, as production of documents or service of a Rule 30(b)(6) notice might well reveal that more than one individual from each entity has pertinent information regarding the subjects in question.)

-       Ten are persons associated with Harpo identified as having knowledge relating to the Oprah Book Club, the Oprah.com website, or the Oprah's Book Club portion of that site:  Jill Adams, Laura Anderson, Carolyn Koller, Alice McGee, Robyn Miller, Garrett Moehring, Doug Pattison, Dianne Starzyk, Natalie Tareghian, Doug Weiner.

-       Three are other persons or entities said to have information regarding the Oprah.com or Oprah ONLINE websites:  the entity AOL, Cynthia Royce,

and Mark Marino.

- Two entities – Sony Electronics and Sony Corp. – are identified as having information about the operation of the Sony website previously accused of infringement or the circumstances of the dismissal of Sony as a defendant in this case.

- Four are persons or entities associated with the Barnesandnoble.com website.  Harpo identifies them as having information regarding the validity and enforceability of ICR's patent:  Roger Black, Jack Horstmeyer, Robert Raines, and Barnes & Noble, Inc. / Barnesandnoble.com, Inc.

- Four are other persons or entities identified as having information regarding issues concerning patent validity or enforceability:  Madres DePasture, Davine Morgan-Witts of Book Browse LLC, and 1st Books Library.

- Two are the entities Amazon.com and Google, Inc., which Harpo identifies as having information regarding patent validity, enforceability, and damages.

- One is the law firm Fish & Richardson, which Harpo identifies as having information regarding prosecution of the '252 patent, validity, and enforceability.

Pl. Mot., Ex. C at 1-7.

## 6.    The parties' arguments

ICR objects to Harpo's amended disclosures, with a handful of exceptions identified earlier.  ICR argues that fact discovery closed in October 2009.  It also argues

that there is no proper justification for Harpo to identify new witnesses at this late date. Finally, ICR contends that it will be unfairly prejudiced if the amended disclosures are allowed to stand due to the fast-approaching trial and final pretrial order dates and the currently-ongoing expert discovery.

In response, Harpo argues that fact discovery reopened after the Court's claim construction ruling, without the need for a request by either party or a separate order by the Court.  It argues in the alternative that if fact discovery is closed, the Court should reopen it to allow what it calls "some limited fact discovery" occasioned by the Court's claim construction orders; a purported change in ICR's infringement theory on April 22; purported changes in ICR's claim construction positions after the October 2009 fact discovery cutoff; and matters referenced in ICR's damages expert reports that were served on April 22.  Harpo argues that ICR will not be prejudiced if the Court allows addition of the new witnesses and that Harpo will be prejudiced if the Court does not do so.

**Discussion**

1.    **The effect of the scheduling order and the LPR**

The Court's March 16, 2009 scheduling order did not provide for automatic reopening of discovery following a claim construction ruling.  Specifically, the order does not state that fact discovery "will resume" or "shall resume" after a claim construction ruling.  Rather, the order states that "[f]act discovery *may resume* upon entry of a claim construction ruling and shall end forty-two (42) days after entry of the claim construction ruling."  Pl. Mot., Ex. A (Order of Mar. 16, 2009) ¶ 1a (emphasis

added).  The use of the word "may" was intended to communicate that reopening of fact discovery was a possibility, not an absolute certainty.

The Court acknowledges Harpo's contention that it read the scheduling order to provide that fact discovery automatically would reopen for forty-two days following the claim construction ruling.  Even if one accepts that statement, however, it does not by any stretch of the imagination justify Harpo's eleventh-hour addition of thirty-one new witnesses to its Rule 26(a)(1) disclosures – with just five days left to go out of the forty-two.

As indicated earlier, the Court's scheduling order in this case tracked the language of the now-adopted Local Patent Rules.  In adopting the LPR, this District, unlike some others that have adopted specialized local rules for patent infringement cases, chose to place the start of the claim construction process near the end of fact discovery.  Specifically, the LPR provide for a period of approximately eight months for fact discovery, starting on the date Rule 26(a)(1) disclosures are due and ending twenty-eight days after the parties make initial exchanges of claim terms to be construed.  *See* N.D. Ill. LPR 1.3.  In the interim, the parties serve initial contentions regarding infringement, validity, and enforceability, *see id.* 2.2-2.5, and final, binding contentions regarding those points.  *See id.* 3.1-3.4.  Shortly after serving the final contentions, the parties exchange position papers regarding claim construction.  Fact discovery closes after that, just before the filing of claim construction briefs.  As indicated earlier, the March 16, 2009 scheduling order in this case tracked these provisions.  *See* Pl. Mot., Ex. A ¶¶ 1a-h.

The decision to place the claim construction process toward the end of fact

9

discovery (in both the LPR and the scheduling order in this case) was premised upon

the belief that this would result in focusing the issues so that the claim construction

process would involve claim terms whose construction is determinative or otherwise

significant, rather than unimportant claim terms.  The Preamble to the LPR states:

> The decision to place claim construction near the end of fact discovery is
> premised on the determination that claim construction is more likely to be
> a meaningful process that deals with the truly significant disputed claim
> terms if the parties have had sufficient time, via the discovery process, to
> ascertain what claim terms really matter and why and can identify (as the
> Rules require) which are outcome determinative.

LPR, Preamble.

The LPR and the scheduling order in this case provide that fact discovery "may"

reopen for six weeks (forty-two days) after the court rules on claim construction.  The

primary purpose of this is to deal with unanticipated points that may have arisen due to

the court's claim construction ruling.  This narrow focus is why the LPR and the

scheduling order in this case contemplated only for a brief period to reopen fact

discovery if otherwise appropriate – six weeks, a small fraction of the time allowed for

fact discovery prior to the outset of the claim construction process.  (Six weeks of

discovery in a patent infringement case is the equivalent of the blink of an eye.)

The structure of the LPR and the scheduling order that the Court entered in this

case make it clear that neither the LPR nor the Court in this case contemplated that a

party would hold back on fact discovery or disclosure of fact witnesses until after a

claim construction ruling.  Rather, as the Court indicated earlier, the opposite is true:

the LPR place the start of the claim construction process near the end of fact discovery

so that claim construction can focus on points that fact discovery has revealed are likely

to be outcome-determinative or otherwise significant.

The entire structure of the LPR and the scheduling order in this case would be turned on its head were one or both parties to defer disclosing or deposing witnesses until after a claim construction ruling.  (This is particularly so in a case like this one, in which Harpo insisted on moving up the summary judgment process so it coincided with claim construction.)  Yet that is exactly what Harpo claims the right to do.  Harpo identified in its initial Rule 26(a)(1) disclosures only four persons "likely to have discoverable information that Harpo may use to support its claims or defenses."  Pl. Mot., Ex. B.   Over fourteen months later, after the claim construction ruling, Harpo dropped three of those four persons and, at the same time, identified thirty-one new potential witnesses and entities (including the four experts and two others to whom ICR does not object).  Harpo then initiated discovery to obtain information from certain of these witnesses and entities that are not under its control.  Perhaps more importantly, Harpo forced upon ICR the prospect of having to scramble to depose numerous additional witnesses and entities that Harpo had just disclosed for the first time.

In short, the course that Harpo has taken is contrary to both the terms and intent of Court's scheduling order and the LPR.  First, as the Court has indicated, the order did not provide for automatic reopening of discovery after the claim construction ruling.  Second, even if it did, Harpo has abused that opportunity by trying to drive a freight train through the eye of a needle.  Assuming Harpo got forty-two days to resume fact discovery after the March 24, 2010 ruling, it remained silent for thirty-seven of those days – including at the April 1 status hearing at which the Court set a schedule for the remainder of the case.  Then, with only five days to go, Harpo dumped twenty-seven

11

new fact witnesses on ICR (including the two fact witnesses to which ICR does not object).

Harpo's addition of the new witnesses would be an abuse of the process even were Harpo reading the scheduling order correctly:  Harpo left ICR with only five days to attempt to obtain discovery regarding the newly-identified witnesses[3] and essentially shifted to ICR the burden of asking for an extension of discovery and, in all likelihood, the trial date.  Harpo was not entitled to arrogate the right to force a continuance of the trial date, which would be required were the Court to permit Harpo's belated Rule 26(a)(1) disclosures to stand.

This alone warrants striking Harpo's newly-disclosed witnesses, with the limited exceptions identified below.  Under Federal Rule of Civil Procedure 16(b)(4), a party must show good cause to amend a scheduling order.  Harpo did not do so.  In fact, it did not even try.  Rather it took it upon itself to attempt to force changes by simply serving the amended disclosures.

**2.     The duty to supplement Rule 26(a) disclosures**

Completely aside from the terms of the Court's scheduling order and the LPR, Harpo's belated addition of twenty-five new witnesses to its Rule 26(a)(1) disclosures is both unauthorized and unjustified.  Specifically, Harpo did not comply with Federal Rule of Civil Procedure 26(e), which requires a party that has made disclosures under Rule 26(a) to "supplement or correct its disclosure . . . *in a timely manner* if the party learns

---

[3] Harpo says in its brief that it identified four of the Harpo-affiliated witnesses not because it intends to call them but because it felt duty-bound to do so (for reasons it does not explain).  *See* Def. Resp. at 3.  But there was no way for ICR to determine that from Harpo's amended disclosures.

that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."  Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).

The record reflects that Harpo's addition of the twenty-five brand-new witnesses on April 30 was anything but "timely" – with one exception the Court will identify.  The Court will address each of Harpo's explanations, such as they are (leaving out the four experts and the two new fact witnesses to whom ICR does not object).

Damages witnesses

*Koller*.  Harpo says that one newly disclosed witness, Koller, "has knowledge to rebut ICR's damage expert's fanciful imagination about the operation of oprah.com."  ICR's expert report was disclosed on April 22, 2010.  Def. Resp. at 6.  On this witness, at least, Harpo has provided a viable explanation for late disclosure.  ICR says there was nothing surprising about its damages witness's Rule 26(a)(2) disclosure, but the fact is that Harpo did not have that disclosure until April 22, just eight days before it served its amended Rule 26(a)(1) disclosures naming Koller.  The addition of this witness does not run afoul of Rule 26(e).

*Google and Amazon.com*.  Harpo says in its response to ICR's motion that Google and Amazon "are . . . specifically relied upon for facts by ICR's damages expert."  Def. Resp. at 3.  Harpo provides no further explanation; for that reason, the Court would be completely justified in ruling that Harpo had forfeited the point.

ICR, however, has provided an apparent explanation for why Harpo believes these witnesses are relevant; ICR says that its damages expert cited licenses that it

provided to Google and Amazon.  ICR argues that because it is commonplace in patent infringement cases to cite prior licenses as evidence of damages, Harpo should have anticipated this and should have sought identified and discovery from these witnesses sooner.  Harpo has not explained why it did not do so.  It has failed to show that the amendment to add these witnesses was timely.

Prior art / invalidity witnesses

The majority of the witnesses that Harpo first named on April 30 are described, in very summary fashion, as having information about patent invalidity issues, predominantly regarding prior art.  Before discussing the particular witnesses and entities, the Court will address two general points concerning these witnesses.

First, in addition to the points noted below, there is a fundamental reason why Harpo's belated disclosure of sixteen prior art / validity / enforceability witnesses is untimely.  Under the Court's scheduling order (which, again, tracked the current PLR), Harpo was required to identify by September 16, 2009, its "final" contentions regarding invalidity and enforceability, including any prior art it relied on to support a claim of invalidity or unenforceability.  *See* Pl. Mot., Ex. 1g; PLR 3.1 & 3.2 (incorporating parts of PLR 2.3).  As a result, Harpo was required to conduct its invalidity / prior art investigation during the summer of 2009, not seven months later after claim construction was over and done with.

Given the structure of the LPR as incorporated in the Court's scheduling order, any contention that Harpo appropriately waited until past the eleventh hour to add prior art witnesses necessarily fails – absent (perhaps) unusual circumstances that Harpo has made no effort to show.  In particular, Harpo does not identify anything about the

14

Court's claim construction order that was unanticipated or that somehow made pertinent either prior art not previously identified or a not-previously-applicable invalidity / unenforceability argument.

Second, Harpo contends that four witnesses, all Harpo employees, "only became relevant as a result of the court's partial claim construction in March [2010]." Def. Resp. at 3. The Court notes that Harpo identifies makes this argument only with regard to these witnesses and not others and thus has forfeited any such claim regarding other newly-named witnesses. In any event, Harpo's argument is misleading. Harpo was aware long before March 2010 of ICR's contentions regarding this particular aspect of claim construction, which the Court later adopted. Harpo was not entitled to hold back on its Rule 26(a)(1) disclosures on the assumption that it would win across the board on its combined claim construction / summary judgment submission.[4] Rather, Harpo was required to disclose, at least once it had ICR's contentions, all witnesses that would support Harpo's own contentions regarding infringement and validity, irrespective of who later prevailed on claim construction. In other words, Harpo was required to anticipate the possibility of an adverse claim construction ruling. The Court notes in this regard that it is utterly commonplace for parties in patent cases to make either-or plans that depend on which side's proposed claim construction the court adopts.

In any event, Harpo makes no effort to explain *how* the claim construction ruling made any of the thirty-one new witnesses pertinent who were not previously pertinent.

---

[4] This point is not unique to patent infringement cases. Were parties entitled to hold back on their Rule 26(a)(1) disclosures until they see how summary judgment turns out, the Rule largely would be a dead letter.

15

Its arguments are, charitably speaking, conclusory.  *See* Def. Resp. at 3.  Again, Harpo has forfeited the point.

The Court next addresses the particular prior art / invalidity / enforceability witnesses first identified by Harpo in its April 30, 2010 amended disclosures and its explanations, such as they are, for the late disclosures.

*De Pasture / New Concepts and 1st Books Library*.  Harpo says that two of the newly disclosed witnesses, De Pasture / New Concepts and 1st Books Library, were practicing the invention that ICR claims in the '252 patent before the date of the patent application.  *Id.* at 4.  Harpo says that its experts "discovered" this, but it provides no information about when or how they did so.  *Id.*  But more importantly, Harpo provides no description of what it did prior to the expert discovery period to try to discover prior art in a timely fashion.  In particular, it makes no attempt to explain what it did to try to identify prior art or witnesses with knowledge about it prior to the September 16, 2009 deadline for its final invalidity / unenforceability disclosures.

Harpo says that ICR sought these witnesses / entities out for deposition earlier during the discovery process, but it does not contend that ICR actually conducted Rule 30(b)(6) depositions of these entities or anyone affiliated with them.  In any event, the fact that ICR may have subpoenaed these entities at some point does not explain or justify Harpo's belated identification of them as persons Harpo may use to support its claims or defenses.

*Barnes & Noble witnesses*.  Harpo says that several of the entities / witnesses (Barnes & Noble, Black, and Raines) have information concerning Barnes & Noble's alleged practice of the claimed invention prior to the date of the patent application.

16

*Id.* at 3-4.  Specifically, Harpo says that Black and Raines worked for a company that designed Barnes & Noble's website in 1996-97 and that book excerpts were used on that website "using the same method as described in Plaintiff's patent filed in February 2000 as construed by the Court."  *Id.* at 4 (footnote omitted).  But Harpo does not contend that it discovered this information recently.  Indeed, Harpo says that "[t]he parties have long known" that Barnes & Noble was displaying book excerpts and jackets on its web site.  *Id.* at 3.  In fact, as Harpo points out, in June 2009, Sony (*not* Harpo) submitted affidavits from Raines and Black concerning the Barnes & Noble site in support of its motion for summary judgment.  *See* Harpo Summ. Judg. Exs. 5 & 6 (dkt. nos. 67 & 68).  But Sony's motion was terminated as moot after it was dropped from the case in late July 2009, and Harpo did not adopt the motion or press any similar point in its own summary judgment motion.  Harpo does not explain why it did not disclose, either then or at any time before April 2010, that Black or Raines would support *its* claims or defenses.

*Amazon.com and Google*.  Harpo's amended Rule 26(a)(1) disclosures identify Amazon.com and Google, Inc. (also identified as damages witnesses) as having information regarding validity and enforceability of the '252 patent.  Harpo's amended disclosures provide no further information.  And in its response to ICR's motion to strike, Harpo does not describe the basis for this aspect of the amended disclosures.  It has therefore forfeited the point.  In any event, Harpo makes no attempt to explain why it is disclosing these witnesses on these topics only now.

*Book Browse*.  Harpo contends that one other witness, Morgan-Watts of

BookBrowse, was "discovered during our invalidity experts' preparation of their timely served reports."  Def. Mem. at 3.  Harpo says this witness likewise has information regarding practice of the invention prior to the date of the patent application.  *Id.* at 5. Again, however, Harpo makes no effort to explain why it did not discover this information sooner, and it does not describe any of its efforts to discover prior art before the October 2009 fact discovery cutoff or before the September 16,2009 deadline for its final invalidity contentions.

*Witnesses concerning Harpo's website*.  Harpo's explanation for its belated disclosure of several of its own personnel (Adams, McGee, Moehring, and Starzyk) is even weaker than the others.  Harpo says that it "it turns out" that Harpo itself was "doing book jackets and excerpts on the Internet" prior to the date of the patent application.  *Id.* at 5.   But because these new witnesses were *Harpo's own personnel*, it was plainly aware of their existence.

Harpo says it has it identified four other non-parties (AOL, Royce, Horstmeyer, and Marino) who can testify regarding Harpo's own practice of the disclosed invention before the date of the patent application.  *Id.* at 5-6.  Again, however, Harpo provides no viable justification for its earlier failure to disclose these witnesses.  Harpo does not claim that the witnesses came to its attention only recently.  Nor could Harpo make such a claim, as these witnesses supposedly have information about something Harpo says it was doing itself.

<u>Others</u>

*Sony / Sony Electronics*.  Harpo states that two of the newly disclosed witnesses / entities are former co-defendants Sony Electronics and Sony Corp., which are said to

18

have information about the operation of Sony's website.  *Id.*  But that is all Harpo says about them.  Harpo provides no explanation for why it did not disclose them as potential witnesses until over nine months after ICR dropped Sony from the case.  And it gives no explanation of why information about Sony's website is relevant to ICR's claims against Harpo.

*Fish & Richardson law firm.*  Finally, Harpo has now disclosed as a witness Fish & Richardson (F&R), a law firm that allegedly assisted Harris, the inventor, in preparing the patent application.  Harpo provides only a single reason for its identification of F&R as a potential witness.  It says that in an affidavit signed in November 2009, Harris said he had "never been found to have committed inequitable conduct in any of the thousands of patents which [he] prosecuted."  *Id.* at 8 (quoting Def. Ex. I ¶ 2).  Harpo says that in another lawsuit, filed in this District in 2007, ICR alleged that F&R advised Harris that *if* he pursued patent infringement litigation, Harris *would* face a claim of inequitable conduct.  *Id.* at 9 & Ex. J.  Harpo does not explain, however, why it did not disclose F&R or attempt to take its deposition at an earlier date.  The Court notes that Harpo first asserted its defense of inequitable conduct long before the October 2009 close of discovery, and it was required to make final disclosures regarding its invalidity / unenforceability contentions by September 16, 2009.

It is true, as Harpo points out, that Sony disclosed F&R in its Rule 26(a)(1) disclosures.  But Harpo never adopted those disclosures, and it did not identify F&R as a witness it might use until April 30, 2010.  The fact that Sony disclosed F&R in no way put ICR on notice that – after it dropped its claims against Sony – *Harpo* might use F&R

19

to support its own defenses.  Indeed, ICR was entitled to read Harpo's failure to act as indicating that Harpo was not planning to use these witnesses.

<u>Summary</u>

In sum, the record before the Court on ICR's motion to strike makes it clear that with the exception of witness Carolyn Keeler, Harpo failed to comply with its obligation under Rule 26(e) to "timely" supplement its Rule 26(a)(1) disclosures with regard to the newly-disclosed witnesses.  It has provided no information from which the Court could find that Harpo acted in timely fashion; all the evidence is to the contrary.

**3.     Rule 37(c) analysis**

Federal Rule of Civil Procedure 37(c) provides that if a party fails to provide or supplement information as required by Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Under Rule 37(c)(1), ""the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" *David v. Caterpillar, Inc.*, 354 F.3d 851, 857 (7th Cir. 2003) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)).  In determining whether the party that failed to comply with the Rules has met its burden, a court considers the prejudice or surprise to the party against which the evidence is offered; that party's ability to cure the prejudice; the likelihood the trial would be disrupted; and any bad faith or willfulness in not disclosing the evidence earlier.  *Id.*

With two exceptions, Harpo has failed to show that its noncompliance with Rules

26(a)(1) and 26(e) is justified or harmless.  As the Court has explained in detail, Harpo largely failed in its response to ICR's motion even to try to explain its late disclosures of the witnesses other than Koller.  It *certainly* did not do so on a witness-by-witness basis. The Court discussed these points in the previous section of this decision.  Harpo has largely forfeited a justification argument.  To the extent it has made such an argument it is without merit.

Harpo argues that it is "more efficient to seek discovery of people connected to prior art after claim construction." *Id.* at 10.  But that is directly contrary to the scheme set forth in the LPR and the scheduling order in this case, which required Harpo to set out its *final* invalidity contentions (including identification of prior art) many weeks *before* claim construction.  *See* N.D. Ill. LPR 3.2-3.4, 4.1-4.3; Pl. Mot., Ex. A ¶ 1g.  As such, Harpo's "efficiency" argument – a criterion not mentioned in Rule 26(e) in any event – cannot be considered a justification for holding back disclosure of its prior art / invalidity witnesses.

Harpo also argues that actions by ICR "have necessitated additional discovery." Def. Resp. at 9.  Harpo cites purported changes in ICR's claim construction positions, *see also* Def. Resp., Ex. L, and a change in ICR's theory of infringement.  The Court notes that the claimed changes in ICR's claim construction position – which are, at most, minute – occurred in mid-November 2009, over five and one-half months before Harpo's late-coming amended Rule 26(a)(1) disclosures.  And even were Harpo's contentions about changes in ICR's positions persuasive, Harpo has made no effort at all to connect these claimed changes to any particular new disclosures that Harpo has made.  Again, Harpo has forfeited the point.

21

In sum, Harpo has not shown that its last-minute disclosure of prior art / invalidity / unenforceability witnesses is justified.  Harpo's response to ICR's motion – in particular, its "efficiency" argument that the Court addressed earlier – suggests that it knowingly or at least recklessly held back on disclosing these witnesses until it saw how things came out on claim construction and summary judgment.  Harpo has not shown – indeed, it has made no effort to show – that the Court's claim construction ruling affected its defenses in any way that it could not or should not have anticipated.  And, as the Court has discussed, the fact that a long-ago-dismissed co-defendant identified a couple of these witnesses does not make it any less prejudicial or surprising to ICR that *Harpo* intended to use them to support its own defenses.

Harpo says that two of the new witnesses / entities, Barnes & Noble, Inc. and Fish & Richardson, P.C., were disclosed by former co-defendant Sony.  Harpo provides no explanation for why it did not disclose these entities in its initial disclosures; why it did not adopt or incorporate Sony's initial disclosures; or why it did not amend its disclosures to include these entities after ICR dropped its claims against Sony in July 2009, over three months before fact discovery closed.  The fact that a different defendant, long ago dismissed from the case, disclosed these witnesses as having information supporting *its* defense gave ICR no clue that *Harpo* considered them relevant or that it intended to use them as witnesses.  ICR was entitled to rely on the fact that Harpo never adopted Sony's Rule 26(a)(1) disclosures, either while Sony was still in the case or after it was dropped in July 2009, nine-plus months before Harpo amended its own disclosures.

The Court also notes that Harpo has not adequately explained the significance of

the F&R witness(es).  As indicated earlier, the only reason it gives for identifying F&R is that Harris, the inventor, said in a November 2009 affidavit that he had never been found to have committed inequitable conduct, but that in a suit filed in 2007, ICR alleged that F&R told Harris that *if* he pursued a particular patent infringement suit, he would face a *claim* of inequitable conduct.  Def. Resp. at 8-9 & Ex. J.  There is no inconsistency there, and Harpo has identified no proper or adequate basis for launching, at the eleventh hour, a search for someone in F&R who might be able to come up with information about this irrelevant point.

For these reasons, Harpo's noncompliance with Rules 26(a)(1) and 26(e) was not justified, with the two exceptions noted below.

The late disclosure of the prior art / invalidity / unenforceability witnesses is likewise not harmless.  ICR lacks the ability, at this stage of the case, to cure the unfair prejudice it would suffer were the Court to permit Harpo to amend its Rule 26(a)(1) disclosures so late in the day.  Though Harpo says that it has no problem with ICR deposing these witnesses, that is beside the point.  When Harpo first disclosed the new witnesses on April 30, 2010, a trial date had already been set, ICR was already engaged in expert disclosure and discovery, and it was about to turn its attention to preparation of the final pretrial order, an arduous task, and preparation for trial. Allowing Harpo's belated disclosures to stand would essentially permit it to, unilaterally, elbow those matters aside and would require ICR to pay the price for Harpo's unjustified actions.  Harpo is not entitled to, in effect, force a continuance of the trial or the hampering of ICR's preparation by shifting the burden of the late disclosures to ICR.

The Court declines, however, to strike Harpo's late disclosure of two witnesses /

entities relating to damages, Amazon.com and Google, even though the disclosure of these witnesses was untimely under Rule 26(e).  As indicated earlier, it appears that these witnesses are relevant because they have information regarding licenses that ICR granted.  The Court agrees with ICR's contention that Harpo could have and should have anticipated this.  But based on the information the Court has, Harpo did not know the details of ICR's position regarding damages until it received ICR's Rule 26(a)(2) disclosures in April 2010.  Permitting discovery regarding licenses that ICR granted will impose no unfair prejudice on ICR.  The information is, in all likelihood, largely in ICR's own hands already, and the focus is discrete enough that ICR should be able to adjust without unduly hampering preparation of the pretrial order or trial preparation and without imperiling the trial date.  And there is no indication that Harpo acted in bad faith or recklessly.  For these reasons, the Court declines to strike these witnesses / entities to the extent they concern licenses obtained from ICR.

## Conclusion

For the reasons stated above, the Court grants in part ICR's motion to strike Harpo's amended initial disclosures [docket no. 121].  All witnesses and entities that Harpo named for the first time in its amended Rule 26(a)(1) disclosures served on April 30, 2010 are stricken, with the exceptions of the four expert witnesses, Scott Harris, and James Parker.  In addition, the Court declines to strike Carolyn Koller, as well as Amazon.com and Google, to the extent they are identified as having information regarding licenses obtained from ICR (but strikes Amazon.com and Google regarding all other topics).  The Court's order striking witnesses includes those persons and entities named in Sony's initial disclosures that Harpo named for the first time in its

24

amended disclosures.

MATTHEW F. KENNELLY
United States District Judge

Date:  May 26, 2010